## Haas Trust Estate

*Roland Fleer,* for accountants.
*M. Paul Smith,* for guardian.

TAXIS, P. J., January 7, 1972.—The account shows a net balance of principal and income for distribution of $30,954,201.27, . . .

A petition to obtain court approval of the division of the trust into separate but equal trusts was submitted to the court. The Attorney General was given notice of said request and has no objection to confirmation of the account or the division of the trust into two separate trusts.

M. Paul Smith, Esq., was appointed guardian and trustee ad litem. He has filed a careful and helpful report, joining in the request that the trust be divided, as requested, and making other recommendations which the court adopts.

After consideration of the request for separation of the trust and after consideration of the views expressed by the guardian ad litem, the court is satisfied that the request is proper and is herewith decreed.

The guardian ad litem succinctly, in his report, summarizes the request for division as follows:

"By petition filed December 1, 1971, F. Otto Haas and John Charles Haas, settlor's son-trustees, have

petitioned for authority, under Section 991 of the Fiduciaries Act of 1949, to divide the trust into two equal but separate trusts, one to be designated 'Trust A—for issue of F. Otto Haas' and the other 'Trust B— for issue of John Charles Haas,' both under Agreement of Trust of Phoebe W. Haas, Settlor, dated August 24, 1961. In support of their petition the petioners assign reasons which may be more briefly stated as follows:

"1. A time will arise during the continuance of the trust when its administration will become unduly complex and difficult because of its size and the number and variety of possible exercises of power of appointment.

"2. Preferences of each petitioner in selecting of charitable beneficiaries and in making investment selections can better be effectuated.

"3. The trust is sufficiently large so that its division in halves will not make it too small and hence impractical or uneconomical.

"4. No party in interest, present or future, can be prejudiced by the division of the trust into halves.

"That the division of the trust in the instant case, with the consent of all parties in interest, can and should be accomplished, is clearly illustrated by instances where Section 991 has been employed since its enactment to accomplish salutary purposes identical to those desired by the present petitioners. For example, in Stotesbury Estate, 85 D. & C. 551, 3 Fiduc. Rep. 505, this Court, with the consent of all parties in interest, including a guardian and trustee ad litem, consented to the division of a trust into three parts, one for each of the life beneficiaries and their descendants. Each life beneficiary resigned as trustee of the other trusts but remained trustee of the trust of which he or she was the life beneficiary. In Sharples Trust,

10 D. & C. 2d 369, 7 Fiduc. Rep. 153, the Court also authorized the division of a trust into three separate trusts with each of the three trustee-income beneficiaries designated as sole trustee of the one-third share of which he or she was the beneficiary. In Widener Trust, 53 D. & C. 2d 788, 20 Fiduc. Rep. 562, the Court permitted the division of a testamentary trust into three separate trusts so that 'in the future certain accounting economies can be realized' as well as to allow for separate investment policies to accomodate the 'present and anticipated financial circumstances of the various beneficiaries.' And in Connelly Estate, 30 D. & C. 2d 775, 13 Fiduc. Rep. 470, the Court authorized the division of a single testamentary trust into four separate trusts despite the guardian and trustee ad litem's refusal to consent to the division. The present guardian is of the opinion that Section 991 of the Fiduciaries Act of 1949 was intended to expedite and simplify the operation of trust estates and has no hesitancy in joining in the request for the division . . ."

And now, January 7, 1972, this adjudication is confirmed nisi.